Billings, District Judge.
This case is before the court upon an application for an injunction pendente lite, which has been heard on the bill and amended bill, and upon counter affidavits and exhibits.
The first question presented is as to the power of the common council to grant to the d'elendant the franchise to lay and operate upon any of the streets of the city of New Orleans a street railroad which shall be propelled by electricity after the trolley method or system. The council have granted such a franchise. Had it the authority to make such a grant? The answer to this question must be found in the present charter of the city of New Orleans, (Act No. 20, 1882.) The provision on that subject is found in the existing charter, (Acts 1882, No. 20, p. 14.) Page 21, § 8, among other things, provides that the common council shall also “have the power to authorize the use of the streets for horse and steam railroads, and to regulate the same; to require and compel all lines of railway or tramway in any one street to run on and use one and the same track and turntable; to compel them to keep conductors on their cars, and compel all such companies to keep in repair *836 the street bridges and crossings through or over which their cars run; to open and keep open and free from obstruction all streets, public squares, wharves, landings, lake shore and river and canal banks.”
It has been argued by the solicitors for the complainants that, when the legislature committed to the common council the power to authorize “horse and steam railroads,” these words “horse and steam’’were words of limitation, and that no power is given with reference to railroads propelled by other motive powers, and it has been urged by the solicitor for the defendant that these words were words of illustration, and that the intention of the legislature was to commit to the city government the authority to authorize street railroads, no matter what was the motive power. It is difficult to see any reason why the legislature should not have committed to the common council the authority to grant in their discretion the use for railroads propelled by any other motive power as well as those propelled by the two specified. It seems to me they granted the discretion as to all street railroads, and mentioned only “horse and steam” railroads because, according to the then existing state, so to speak, of the art, horses and steam were the only means for the propulsion of street cars in use. Not to adopt this view would be to infer that the legislature meant to exclude all other means of propulsion which the ever-advancing spirit of invention might discover. Such a prohibition would much more naturally have been put in a positive, express form. The public good required that the common council should be at liberty to place at the service of the public street railroads with all the valuable improvements in the means of propulsion which ingenuity and science should from time to’ time discover, the matter of the public safety and public inconvenience being left to be considered by the common council. It is the duty of courts to interpret statutes in aid of their manifest object. So that, so far as concerns the objections to the nature of the motive power and the method by which it is used, my opinion is that it ought not to be maintained.
2. The second objection arises from the manner in which the franchise was advertised and originally adjudicated.' The facts as to this point are that the route advertised and in the first instance adjudicated was from Canal street to Audubon park and back, a distance of 6 miles, which, from St. Mary street to Louisiana avenue, a distance of 16 blocks, lay through Constance street, both going and returning. After this adjudication to the defendant, without any fresh advertisement or any new public auction, but by the simple agreement between the common council and the defendant, the route of the railroad was changed so that the return track was to be laid for that distance, viz., 16 blocks, through Coliseum street; so that there never was any advertisement or public auction of the franchise so far as the road runs through Coliseum street. It is urged by the defendant that the route between the termini had been advertised and publicly sold, and that the change was of such character that authority to make it might fall within the power to perfect a thing already done. The statute which controls this matter is Act No. 135, p. 192, Acts 1888, p. 193, § 4:
*837 “Be it further enacted,” etc., “that said council shall not have power to grant, renew, or to sell or to dispose of any street-railroad franchise, except after at least three months’ publication of the term and specifications of said franchise, and after the same has been adjudicated to the highest bidder by the comptroller, as provided in section 21 of the city charter.”
The indispensable prerequisite of a grant of any street-railroad franchise is “publication for three months of the term and specifications of such franchise,” followed by an adjudication at public auction. The object which the legislature had in view was to secure a full price by insuring free competition after complete information as to the thing to be sold by advertisement of “the term and specifications of the franchise.” The only franchises dealt with by the legislature were street-railroad franchises. Specifications of such a franchise for the purpose above set forth must include not only the termini and the general route, but also all the streets through which it is to pass. For every street has its own patronage of the cars, and, unless the franchise was confined to the streets enumerated in the advertisement and adjudication at the auction, there might be the acquisition of a franchise, the value of which could not with any accuracy be ascertained from the advertisement. If a change in 16 blocks is permissible, it is difficult to see where the departure from the statute would stop. The embarrassment in which the city found itself by having permitted the two tracks on Constance street cannot be ground for disregarding the law. As it seems to me, the defendant has not acquired a title to the franchise so far as it is to run through the 16 blocks upon Coliseum street.
3. The third objection is to the validity of the entire grant. I think it might well be held that the reference to the specifications on file in the comptroller’s office in the advertisement was tantamount to their insertion in the advertisement itself. The specifications thus on file call for, and the adjudication at public auction was made “for, the highest bid in square yards of gravel pavement,” and not for the highest bid in money. It seems to me that where a bid is invited in corn or wine or any goods, wares, or merchandise, it necessarily more or less circumscribes the freedom of the competition, for there is more or less difficulty in obtaining any article, even to those who have the money. It is not enough that the city needs the article; the article itself must also be as easily obtainable as money. The substitution of anything for money itself would naturally give an advantage to those who had that article, and who knew how, or where, and upon what terms, it could be purchased, and would make the sale less calculated to absolutely secure the highest price, and thus defeat the object of the statute. Section 4 (Act No. 135 of Acts 1888) above referred to, requires that the sale shall be to the highest bidder by the comptroller as provided in section 21 of the city charter. That section, which is found on page 25 of the Acts of 1882, requires that the sale shall be offered by the comptroller at public auction, and given to the lowest bidder. Now, it seems to me clear that, considering the object the legislature had in placing this prohibition upon the common council, requiring the long *838 advertisement of three months and sale at auction of railroad franchises, they meant that the sale should be for that which would least restrict the number of purchasers, as well as the amount of the bid, and therefore meant that it should be for money; and that the sale of the entire franchise to the defendant having been for gravel pavement, and not for money, is invalid.-
4. There is a remaining point to he considered, as to whether there has been such acquiescence in the grant to the defendant on the part of the complainants, and such a sleeping upon their rights, that they ought to be considered as having in equity no right to urge the objections to the defendant’s grant. The final ordinance — that which related to Coliseum street—was passed August 2, 1892, and the grant to the defendant under this ordinance was made on September 9, 1892. The original bill in the state court was filed October 17, 1892. This makes the interval between the passing of the ordinance and the filing of the bill two months and a half, and the interval between the date of the grant and the filing of the bill one month and eight days. I do not think that this delay, under the ' circumstances as they appear by the bill and affidavits, should be deemed such an acquiescence as would in courts preclude the complainants from asserting whatever rights they may have. The conclusion which I have reached is that upon the second and third grounds mentioned above the injunction should issue.